# Clopton *versus* The Philadelphia and Reading Railroad Company.

1. United States and state taxes on bonds are a charge on the principal of the debt although to be collected out of the interest.

2. The clause in a mortgage by a corporation or natural person, that the payment shall be "without any deduction, defalcation or abatement for any taxes," &c., "whatsoever," is a stipulation to pay the taxes on the *land* mortgaged, not on the *debt* secured.

3. The tax levied by the United States is a tax upon the debt secured, not a tax on the debtor. The company is made the agent to collect the tax but the burden is imposed on the bondholder.

February 21st 1867. Before WOODWARD, C. J., THOMPSON and STRONG, JJ. READ, J., sick. AGNEW, J., at Nisi Prius.

Appeal from the Court of Nisi Prius.

This was a bill in Equity by John Clopton against The Philadelphia and Reading Railroad Company, brought to January Term 1866.

Clopton, the plaintiff, a British subject residing in London, was

[Clopton v. Philadelphia and Reading Railroad Co.]

the holder of coupon bonds of the defendants, secured by mortgages dated respectively May 31st 1843 and November 7th 1849. The interest is at the rate of 6 per cent. payable semi-annually. The condition of the mortgage is:—

" Provided always, nevertheless, that if the Philadelphia and Reading Railroad Company, their successors or assigns, shall and do well and truly pay, or cause to be paid, unto the person or persons, bodies politic or corporate, who shall become the holders of the bonds to be issued as aforesaid, the several and respective sums for payment whereof the said bonds shall be issued, on the day and time hereinbefore mentioned and appointed for payment thereof, together with lawful interest for the same, according to the condition of the said recited obligations or bonds aforesaid, without any fraud or further delay, and without any deduction, defalcation or abatement to be made of anything for or in respect of any taxes, charges or assessments whatsoever, then and from thenceforth, as well this present indenture and the estate hereby granted as the said recited obligation shall become void and of no effect; anything hereinbefore contained to the contrary notwithstanding."

The defendants refuse to pay the interest in full, claiming the right to deduct from it the state and United States taxes on the coupons.

The bill was brought to compel the payment of the interest without any such deduction. The answer admits the facts charged by the bill. The bill was dismissed at Nisi Prius, and the plaintiff appealed.

*P. McCall*, for appellant, cited Maltby v. Reading and Col. Railroad, 2 P. F. Smith 140 ; Act April 11th 1862, § 1, Purd. 1275, Pamph. L. 477 ; Peart v. Phipps, 4 Yeates 386 ; Brewster v. Kitchin, 1 Ld. Rayd. 317 ; s. c. 1 Salk. 198 ; Combes 424, 466 ; Bradbury v. Wright, Dougl. 602 ; Sandwith v. Desilver, 1 P. A. Browne 221 ; Jackson v. N. Cent. Railway Co., C. C. U. S. Md. ; Act of Cong. July 13th 1866, § 19 ; " Acts and Res. of Cong." 144, sec. 122, Stat. at Large 107 ; 2 Dan. Ch. Pr. 1244.

*J. E. Gowen*, for appellee.—Act of April 29th 1844, § 32, Purd. 949, pl. 117, Pamph. L. 497 ; § 34, Purd. 950, pl. 120, Pamph. L. 499 ; May 1st 1854, § 1, Purd. 942, pl. 77, Pamph. L. 518 ; April 30th 1864, § 3, Purd. 1378, Pamph. L. 219 ; Robinson v. Allegheny, 7 Barr 161 ; Scott v. Fields, 7 Watts 360 ; Floyer v. Lavington, 1 P. Wms. 268 ; Briscoe v. King, Cro. Jac. 281 ; s. c. nom. Bristoe v. Knipe, Yelv. 206 ; Lawley v. Hooper, 3 Atk. 278 ; 2 Munf. 337.

The opinion of the court was delivered, March —, 1867, by

[Clopton *v.* Philadelphia and Reading Railroad Co.]

STRONG, J.—The single question presented for adjudication is, whether the defeasance in the mortgages of the defendants amounts to an engagement of the mortgagors to pay, in addition to interest, the state and United States taxes chargeable upon the holders of the bonds secured by the mortgages?

The taxes are a charge upon the principal of the debt, though to be collected out of the interest, and the holders of the bonds are liable to the charge in consequence of their being such holders; but the plaintiff insists that the mortgagors have contracted to pay alike, principal and interest and taxes upon the debt. We are therefore to inquire whether such is the true meaning of the defeasance. It is the same in both mortgages, and it is in these words: "Provided always, nevertheless, that if the said the Philadelphia and Reading Railroad Company, their successors and assigns, shall and do well and truly pay, or cause to be paid unto the person or persons, bodies politic or corporate, who shall become holders of the bonds to be issued as aforesaid, the several and respective sums for payment whereof the said bonds shall be issued, on the day and time hereinbefore mentioned and appointed for payment thereof, together with lawful interest for the same according to the condition of the said recited obligations or bonds aforesaid, without any fraud or further delay, and without any deduction, defalcation or abatement to be made of anything for and in respect of any taxes, charges or assessments whatsoever, then and from thenceforth, as well this present indenture and the estate hereby granted as the said recited obligations, shall become void and of no effect, anything hereinbefore contained to the contrary notwithstanding." This clause, "without any deduction, defalcation or abatement," &c., is not peculiar to these mortgages. It has been a part of the common form for more than a hundred years; certainly it has generally if not always been incorporated into defeasances of mortgages, whether given by corporations or by natural persons. It must therefore be considered that when these defendants introduced it into these mortgages they intended no more and no less than what had been understood to be the meaning of the stipulation in other similar contracts, and any one who took bonds secured by the mortgages must have understood that the clause had the same meaning which it had when used in any other mortgage. But no one has ever supposed it to be a stipulation that a mortgagor shall not only pay the taxes upon the lands mortgaged, but also whatever taxes may be assessed upon the debt secured to the mortgagee. Certainly before the present, no attempt has been made to treat it as such a far-reaching contract, and I think it would surprise mortgagors in this state were we to hold that this clause, which is to be found in almost all if not in all mortgages, and in every book of forms, bound them to protect

their mortgagees against any demands of the government for taxes on account of their ownership of the money secured. Such is not its meaning. It has no reference to any obligations of the creditor as a holder of the bond secured. The taxes, charges and assessments referred to are those which may be charged upon the premises conveyed in mortgage. Whatsoever is paid in discharge of them shall not be deducted, defalcated or abated from the debt and interest due to the mortgagee. It is strange language to speak of a mortgagor's deducting what a mortgagee has paid or is liable to pay for taxes on the mortgagor's property. When it is remembered that the same stipulation in the same words has generally been made in mortgages from a time so remote that the commencement of its introduction is unknown, and when the history of the law in regard to mortgages is borne in mind, it is easy to see what was intended by it. A mortgagee was of old regarded as the legal owner of the land, and consequently entitled at law to immediate possession, or to the receipt of the rent if the land was in lease. Though this is not now the idea of a mortgagee's right, it was undoubtedly the law when the stipulation under consideration was introduced: Coote's Law of Mortgage 324, 325 and 339. It is so yet in England. As such owner, and especially if in possession, the mortgagee was chargeable with the land tax, or if the possession remained in the mortgagor, he was at law regarded but as the tenant at will or sufferance of the mortgagee: Doe v. Hales, 7 Brightly 322; Doe v. Olley, 12 A. & E. 481, Coote on Mortgages, book 3, chap. 1. The consequence of this doctrine was, that if the mortgagor paid the taxes levied on the lands he paid them in relief of the mortgagee. We have, then, a reason why this clause was introduced into mortgages, and not only a reason, but a guide to determine what the parties intended by it. It was to indemnify the mortgagee, if in possession, against the burden of taxes upon the premises mortgaged, a burden which it was thought his ownership might impose upon him, or it was to prevent any deduction from the debt because of taxes which the tenant might have paid on account of the legal owner. It was therefore simply making the mortgage an assurance of its subject, free from diminution by any governmental action in taking a part of it by taxation. To give any larger meaning to it is to prevent its object. It is more. It is to make the stipulation illegal in most cases. For if a mortgagor, having assumed to pay legal interest, bound himself also to pay a debt or liability of his mortgagee, his contract was to pay more than legal interest for the usance of money. Surely such a construction cannot be put upon such a stipulation. It can therefore, at most, amount to nothing more than an engagement by the mortgagor to pay all taxes and assessments whatsoever upon the mortgaged premises.

The complainant argues that there is peculiar significance in

the word "whatsoever," and he infers from its use that "any taxes, charges or assessments whatsoever" must embrace every tax, charge and assessment, both upon the debt secured and the premises mortgaged. But aside from the fact that this word has always constituted a part of the stipulation against deduction for taxes, &c., that it is not a new addition from which it might be inferred that a meaning was intended that the phrase had not borne before, it is not easy to perceive how it makes the subject of the stipulation any more comprehensive. There can be no difference in sense between " all taxes," and all " taxes whatsoever."

The cases relative to ground-rents, referred to by the complainant, when examined, will be found to furnish no support to his theory of the construction to be given to the language of the defeasances in these mortgages. Peart *v.* Phipps, 4 Yeates 386, is the first one cited. There a conveyance had been made to the defendant reserving a ground-rent, which the defendant had covenanted to pay " clear of all charges and assessments whatsoever," and it was held he could not deduct from the ground-rent reserved taxes levied and assessed upon the ground itself, or upon the ground-rent, although they had been paid by him. Now, passing by the obvious difference between that case and this, to be found in the fact that in one there was a covenant and in the other there is none (there being no covenant arising out of the clause of defeasance on a mortgage for which there is abundant authority), it is to be observed that the reservation of the ground-rent was in law a conveyance of the rent, the incorporeal hereditament, to the grantor of the land. Its legal effect was the same as if the rent had been conveyed by a separate deed, like the grant of a fee farm rent in England. A reservation, unlike an exception, is a re-grant. Therefore when the defendant in Peart *v.* Phipps granted the rent to the plaintiff, and covenanted to pay it clear of all charges, his covenant relates to the subject of his grant. There was nothing else to which it could refer, not even the land out of which the rent issued. The subject of the grant in the present case is not the debt due the plaintiff, but certain real estate and franchises, conveyed as a security for it. Similar remarks might be made respecting Sandwith *v.* Desilver, 1 Browne 221, though the precise question in that case seems to have been whether such a covenant ran with the land and bound the assignee of the grantor of the rent, and nothing more is decided in Brewster *v.* Kitchen, Ld. Raymond 317. The covenant was that the grantee should be paid the rent " without deduction of any taxes for the said rent." In Bradbury *v.* Wright, 2 Doug. 624, the thing decided was that the grantee of a fee farm rent, payable " without any deduction, defalcation or abatement, for or in any respect whatsoever," is entitled to the full rent, without deduct-

[Clopton *v.* Philadelphia and Reading Railroad Co.]

ing the tax upon the land out of which the rent issues. These cases, so much relied upon by the complainant, instead of supporting his position, tend rather to show that the stipulation "free from taxes," &c., refers to taxes upon the subject of the grant. And no case is to be found that gives it a wider compass.

We hold, therefore, that there is nothing in the defeasances of the defendant's mortgages which binds the mortgagors to pay any other taxes than such as may be levied upon the mortgaged premises. This disposes of the whole case.

It is hardly necessary to say that the tax levied by the United States government is a tax upon the debt secured by the mortgage, and not a tax upon the debtor. The company is constituted the agent of the government to collect the tax, but the burden of collecting it is imposed upon the bondholder.

The decree of the court given at Nisi Prius is affirmed.